IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:07-CV-173-BR

| | |
|---|---|
| LONNELL ROBERTS, | ) |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM AND RECOMMENDATION** |
| CITY OF NEW BERN | ) |
| Defendant. | ) |

This matter is before the court on a motion for summary judgment filed by defendant City of New Bern. [DE #14]. Plaintiff has responded [DE-22], and defendant has replied [DE-24]. This matter is ripe for adjudication.

## STATEMENT OF THE CASE

Plaintiff commenced this action against his former employer, the City of New Bern ("City"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff alleges that the City unlawfully rejected his application for employment as a Pump Station Mechanic in retaliation for his prior complaints of race discrimination. Plaintiff further alleges that the City unlawfully terminated his employment due to race and in retaliation for his complaints of race discrimination, including an EEOC charge filed after the City rejected his application for the Pump Station Mechanic position. The City now moves for summary judgment, contending that plaintiff has failed to make out a prima facie case on any of his claims and that in any event the City has established legitimate non-retaliatory reasons for its actions which plaintiff has been unable to counter sufficiently to withstand summary judgment.

## STATEMENT OF THE FACTS

The facts in this case, viewed in the light most favorable to plaintiff Roberts, the non-moving party, are as follows:

Plaintiff Lonnell Roberts began working for the City of New Bern as a Utilities Maintenance Worker in 2002. Within six months after commencing his employment with the City, plaintiff began asking about how he might transition into the coveted position of Pump Station Mechanic I, which offered higher pay, more prestige, and use of a company vehicle. There were no open Pump Station Mechanic positions at that time. In January 2005, plaintiff complained to a superior about the lack of black Pump Station Mechanics working for the City. Through conversations with several fellow employees, including at least one individual in a supervisory position, plaintiff came to believe that the lack of black Pump Station Mechanics was the result of racial prejudice on the part of the City's Human Resources Department and, in particular, the City Engineer, David Muse. When plaintiff confronted Muse with his theory of racial bias in June 2005, Muse became angry and stated that he could fire plaintiff. Thereafter, Muse treated plaintiff poorly on a number of occasions and instructed a supervisor to lower an evaluation of plaintiff.

On February 13, 2006, plaintiff submitted an application for an open Pump Station Mechanic position. Less than two weeks later, plaintiff met with his immediate supervisor and told him that Muse's conduct was unprofessional and he wanted it stopped. The supervisor dismissed plaintiff's concerns with the hope that "[Muse] would get over it." (Pl.'s Dep. at 3.) A week later, plaintiff met with the City Manager and raised the issues of Muse's allegedly unprofessional conduct and plaintiff's concerns about the lack of black Pump Station Mechanics. After this meeting, Muse's poor treatment of plaintiff continued.

2

On May 3, 2006, Muse and the City's Human Resources Director threatened to issue a disciplinary letter against plaintiff containing false allegations, though they never actually issued the letter.

In June 2006, plaintiff learned that another black male, James McClease, had been selected for the Pump Station Mechanic position. McClease did not apply for the position. Instead, the position was offered to McClease by two City officials. McClease declined before eventually accepting the position.[1] Prior to taking on the Pump Station Mechanic job, McClease had experience as a marine electrician with the Navy. This is relevant because, according to McClease (and uncontradicted on this record), the Pump Station Mechanic's job is "eighty percent" electrical work. (McClease Dep. at 11-12.) During McClease's three years with the City prior to taking on the Pump Station Mechanic position, he served as a Senior Maintenance Worker, which primarily consisted of cutting grass. However, during this three-year period, McClease also "pulled call" as a Pump Station Mechanic, which required him to perform the duties of a Pump Station Mechanic for at least two 24-hour shifts every month.

In August 2006, plaintiff received a second low evaluation, which he believed to be a response to his complaints of discrimination. Also in August, a supervisor told plaintiff he had been denied the Pump Station Mechanic position because he failed to follow proper protocol and pursue his discrimination complaint through the City's Human Resources Department. On August 24, 2006, plaintiff filed an EEOC charge alleging he was denied the Pump Station Mechanic position in retaliation for his complaints of discrimination.

---

[1]The record on the circumstances surrounding Mr. McClease's application for and acceptance of the position is unclear. For purposes of ruling on defendant's motion, the court resolves inconsistencies in plaintiff's favor.

3

In January 2006, plaintiff suffered injuries to his elbow and lower back when a city vehicle he was driving was struck from behind by another vehicle. In October 2006, plaintiff was out of work due to elbow and back injuries sustained in the accident. On October 23, 2006, one of plaintiff's doctors, Dr. Wheatley, authorized plaintiff to return to light duty work related to plaintiff's elbow injury. (Pl.'s Resp., Ex. 3 at 19-20.) Dr. Wheatley indicated he would defer to a neurologist, Dr. Dalrymple, with respect to any restrictions related to plaintiff's back injury. (Id.) After receiving Dr. Wheatley's notes, on November 9, 2006, the City offered plaintiff a light duty position. (See Pl.'s Resp., Ex. 2 at 46.) The following day, New Bern Family Practice assigned plaintiff restrictions related to his back injury that would allow plaintiff to perform light duty work. (See id.) However, New Bern Family Practice also recommended that plaintiff see Dr. Dalrymple, the neurologist, for a second opinion on plaintiff's back injury. (See id.; Pl.'s Resp. Ex. 3 at 21.) An appointment was made for plaintiff to see Dr. Dalrymple on November 28, 2006.

On Thursday, November 16, the City communicated with plaintiff through his attorney and directed plaintiff to return to work on Friday, November 17th, at 7:30 a.m., or to produce a doctor's note substantiating the medical necessity for plaintiff's continued absence. Plaintiff did not return to work or produce the requested doctor's note on the 17th. Plaintiff telephoned his supervisor on Monday, November 20th, at 11:30 a.m., to inform the City of his continued absence. Plaintiff's supervisor forgot to tell anyone about the call until after the City had issued plaintiff a termination letter.[2]

---

[2] Plaintiff's deposition is unclear as to whether he disputes that his attorney told him the City expected him to return on the 17th. The record is also unclear on what was discussed in plaintiff's telephone call to his supervisor on Monday, November 20th.

4

On December 4, 2006, David Muse met with plaintiff and presented him with a letter stating that the City considered plaintiff's unauthorized absence an act of insubordination in violation of the City's Personnel Ordinance on Employee Conduct. The letter terminated plaintiff's employment with the City effective December 4, 2006.

Plaintiff appealed the termination. Plaintiff's primary argument at the ensuing termination hearing was that, fairly read, the doctor's notes required plaintiff to remain out of work pending a second opinion with a neurologist regarding his back condition. Plaintiff prevailed in a parallel proceeding before the North Carolina Industrial Commission related to the City's attempt to cease paying plaintiff's worker's compensation claim. In that proceeding plaintiff offered the same argument he made in the termination appeal, supported by the same doctor's notes. The Industrial Commission found, in relevant part:

- On October 23, 2006, one of plaintiff's doctors released plaintiff to light duty work regarding his elbow injury. The same physician deferred to the neurosurgeon regarding his back injury.

- On November 10, 2006, New Bern Family Practice assigned plaintiff lifting restrictions that would allow him to perform light duty work. However, New Bern Family Practice also recommended that plaintiff obtain a second opinion from a neurosurgeon on his back condition.

(Pl.'s Resp., Ex. 2 at 46.) The Industrial Commission rendered a decision fully favorable to plaintiff, concluding, "As plaintiff has not yet undergone a second opinion with a specialist regarding his back condition, defendants have failed to make a sufficient showing that plaintiff unjustifiably refused suitable employment within his restrictions." (Id.) Accordingly, the Industrial Commission found plaintiff entitled to ongoing worker's compensation. (Id.)

5

The Industrial Commission issued its decision on December 20, 2006. The same day, the City Manager upheld the termination of plaintiff's employment. Plaintiff filed a second EEOC charge alleging that his termination was due to plaintiff's race and his prior complaints of discrimination. The EEOC issued Right to Sue letters related to both of plaintiff's charges.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate pursuant to Rule 56 of the Federal Rules of Civil Procedure when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). As this court has stated, summary judgment is not a vehicle for the court to resolve disputed factual issues. Faircloth v. United States, 837 F. Supp. 123, 125 (E.D.N.C. 1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. Anderson, 477 U.S. at 249.

In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. United States v.

Diebold, Inc., 369 U.S. 654, 655 (1962) (per curium). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. Accordingly, the court must examine "both the materiality and the genuineness of the alleged fact issues" in ruling on this motion. Faircloth, 837 F. Supp. at 125.

## II. Analysis

Plaintiff's complaint contains three claims: (1) the City refused to hire plaintiff for the open Pump Station Mechanic position in retaliation for his previous complaints of race discrimination, (2) the City terminated plaintiff's employment due to his race; and, (3) the City terminated plaintiff's employment in retaliation for his complaints of race discrimination. The court discusses each claim in turn.

### A. Refusal to Hire

Defendant argues that plaintiff is unable to make out a prima facie case of retaliation. To do so, plaintiff must show (1) that he engaged in protected activity; (2) that an adverse employment action was taken against him; and (3) that there is a causal connection between the protected activity and the adverse action. Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998). Defendant allows that this record demonstrates that plaintiff engaged in statutorily protected activity and that the City's refusal to hire plaintiff for the Pump Station Mechanic position was an adverse employment action. However, defendant contends that plaintiff has failed to bring forth sufficient facts to demonstrate a causal link between the two. Instead, the City argues, the record reflects that plaintiff, who was not particularly well-qualified for the Pump Station Mechanic position,

was denied the position while an individual with significant engineering experience and three years of <u>actually performing the duties of a Pump Station Mechanic</u> (while "pulling call") was hired.

Plaintiff has failed to respond in any fashion to defendant's motion for summary judgment as it pertains to plaintiff's refusal-to-hire claim. Accordingly, in light of plaintiff's failure to respond, and because the record contains insufficient direct evidence of discrimination or circumstantial evidence that might allow plaintiff to demonstrate a causal nexus between plaintiff's complaints of discrimination and defendant's refusal to hire plaintiff as a Pump Station Mechanic, the court recommends granting defendant's motion in part and entering summary judgment in defendant's favor on plaintiff's refusal-to-hire claim.

B.  <u>Termination Due to Race</u>

To show that the City engaged in racial discrimination in its enforcement of employee disciplinary measures, plaintiff must show both that his misconduct was comparable in seriousness to that of other employees outside his protected class and that the disciplinary measures enforced against him were more severe than those enforced against the other employees. <u>Taylor v. Virginia Union University</u>, 193 F.3d 219 (4th Cir. 1999) (en banc), <u>abrogated on other grounds by</u> <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 95 (2003); <u>Cook v. CSX Transp. Corp.</u>, 988 F.2d 507, 511 (4th Cir. 1993).

Defendant argues, and this court agrees, that plaintiff has failed to bring forth any evidence regarding these comparative factors. Plaintiff's response to defendant's motion completely ignores defendant's argument and makes no attempt to salvage the claim of race discrimination set forth in plaintiff's complaint. Accordingly, the court recommends

8

granting defendant's motion in part and entering summary judgment in defendant's favor on plaintiff's discriminatory termination claim.

C.  Termination in Retaliation for Plaintiff's Complaints of Discrimination

To prevail on his retaliation claim, plaintiff must satisfy the three-step proof scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Plaintiff must first establish a prima facie case of retaliation. If plaintiff meets the requirements at this step, the burden then shifts to the City to articulate a non-discriminatory reason for the termination. If the City meets its burden, at the third step plaintiff must ultimately prove that retaliation, and not the City's articulated reason, was the true reason for the termination. Id.; see St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-11 (1993); Laughlin, 149 F.3d at 258.

The City does not seriously contest plaintiff's ability to make out a prima facie case on his retaliation claim. As noted above, plaintiff must show (1) that he engaged in protected activity; (2) that an adverse employment action was taken against him; and (3) that there is a causal connection between the protected activity and the adverse action. Laughlin, 149 F.3d at 258. There is no dispute that plaintiff engaged in statutorily protected activity or that the termination was an adverse employment action. The City argues that the record contains insufficient evidence of a causal connection between the protected activity and the adverse action. However, the substance of its argument deals exclusively with the race-based termination claim discussed supra. In any event, plaintiff has met his burden of demonstrating a prima facie case through the deposition transcripts and affidavits of record, doctors' notes, hearing transcript, and correspondence between plaintiff and the City. The record contains significant circumstantial evidence tending to

show a causal connection between plaintiff's complaints of racial discrimination and the City's termination of plaintiff's employment in December 2006.

The record also contains sufficient evidence from which the City can meet its burden at the second step of the burden-shifting framework. It is undisputed that the City demanded plaintiff return to work only after receiving notes from Dr. Wheatley indicating that plaintiff's elbow injury would not preclude him from performing light duty work, and separate notes from New Bern Family Practice supporting similar restrictions related to plaintiff's back injury. It is also undisputed that plaintiff failed to comply with the City's directive that he return to work or produce medical documentation supporting his continued absence by November 17th, 2006, at 7:30 a.m. It is further well-supported that the City's directive was grounded in its Personnel Ordinance on Employee Conduct. Significant disagreements remain surrounding the second opinion plaintiff was to obtain from the neurologist, Dr. Dalrymple; communications between and among plaintiff, plaintiff's doctors, plaintiff's attorneys, City officials, and others; and the reasonableness and relative timing of actions taken by the City to terminate plaintiff's employment. Nevertheless, the City has articulated and offered specific evidence to support a legitimate, nonretaliatory reason for the termination.

With each of the parties having met its respective burden at the first and second steps of the McDonnell Douglas framework, plaintiff bears the "ultimate burden of persuading the [trier of fact] that [he] has been the victim of intentional discrimination." St. Mary's, 509 U.S. at 508, quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). In this regard, plaintiff shall have "the full and fair opportunity to demonstrate, through presentation of his own case and through cross-examination of the

10

defendant's witnesses, that the proffered reason was not the true reason for the employment decision." Id. (internal quotations omitted). Summary judgment is not appropriate on this claim because there is sufficient evidence in the record from which a reasonable jury could conclude that the City's purported reason for terminating plaintiff's employment was merely a pretext and that the termination was, in fact, in retaliation for his discrimination claims.

## CONCLUSION

For the foregoing reasons, the court **RECOMMENDS** that defendant's Motion for Summary Judgment be **GRANTED** as to (1) plaintiff's refusal-to-hire claim and (2) plaintiff's race-based termination claim. The court **RECOMMENDS** that defendant's Motion for Summary Judgment be **DENIED** as to plaintiff's retaliatory termination claim.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This 13th day of February 2009.

DAVID W. DANIEL
United States Magistrate Judge