UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:07-CV-173

LONNELL ROBERTS,                )
                                )
        Plaintiff,               )
                                )
        v.                       )       O R D E R
                                )
CITY OF NEW BERN,               )
                                )
        Defendant.              )

This matter is before the court on the 13 February 2009 Memorandum and Recommendation ("M&R") of Magistrate Judge David W. Daniel on defendant's motion for summary judgment, and defendant's objections thereto. Plaintiff did not file any objections, nor any response to defendant's objections, and the time within which to do so has expired. This matter is ripe for disposition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff began working for defendant as a Utilities Maintenance Worker in 2002. (Compl. ¶ 3.) Within six months after commencing his employment with defendant, plaintiff began asking about how he might transition into the coveted position of Pump Station Mechanic I, which offered higher pay, more prestige, and use of a company vehicle. (Pl. Dep. at 38; Pl. Aff. ¶ 2.[1]) In January 2005, plaintiff complained to a superior about the lack of black Pump Station Mechanics working for defendant. (Compl. ¶ 4; Hayes Aff. ¶ 6.) There were no open Pump Station Mechanic positions at that time. (Hayes Aff. ¶ 7.) Through conversations with several fellow employees, including at least one individual in a supervisory position, plaintiff came to believe that the lack of black Pump Station Mechanics was the result of racial prejudice on the part of defendant's human resources

---

[1] Plaintiff did not number the paragraphs of his affidavit.

department and, in particular, City Engineer David Muse. (Pl. Aff. ¶¶ 4-6.) When plaintiff confronted Muse with his theory of racial bias, Muse became angry and stated that he could fire plaintiff. (Id. ¶¶ 7-8.) Thereafter, Muse treated plaintiff poorly on a number of occasions and instructed a supervisor to lower an evaluation of plaintiff. (Id. ¶ 9.)

On 13 February 2006, plaintiff applied for an open Pump Station Mechanic position. (Compl. ¶ 7; Pl. Aff. ¶ 10; Pl. Resp. Opp. Summ. J., Exh. 2 at 47-51[2] (2/13/06 employment application).) Less than two weeks later, plaintiff met with his immediate supervisor (James Ipock) and told Ipock that Muse's conduct was unprofessional and plaintiff wanted it stopped. (Pl. Aff. ¶ 11.) Ipock dismissed plaintiff's concerns with the hope that Muse "would get over it." (Pl. Dep. at 3; Pl. Aff. ¶ 11.) Two days later, plaintiff met with the city manager and raised the issues of Muse's allegedly unprofessional conduct and plaintiff's concerns about the lack of black Pump Station Mechanics. (Pl. Aff. ¶ 12.) After this meeting, Muse's poor treatment of plaintiff continued. (Id.) On 3 May 2006, Muse and Sonya Hayes, defendant's human resources director, threatened to issue a disciplinary letter against plaintiff containing false allegations, though they never actually issued the letter. (Id. ¶ 13.)

In June 2006, plaintiff learned that another black male, James McClease, had been selected for the Pump Station Mechanic position. (Pl. Aff. ¶ 14.) Although McClease had not applied for the position, it was offered to him by Ipock and another supervisor. (Pl. Resp. Opp. Summ. J., Exh. 2 at 1 (3/7/06 statement signed by McClease).) Prior to taking the Pump Station Mechanic job,

---

[2] By filing all of his exhibits in opposition to the motion for summary judgment as one 54-page document described only as "Exhibit 2," plaintiff failed to comply with the court's policy on the electronic filing of exhibits, which requires that "exhibits must be identified with a clear and complete description of the document" and "must be separated as a filing party would do when creating a hard copy version of the documents." (CM/ECF Policy Manual at 18, *available at* http://www.nced.uscourts.gov.) Thus the court is forced to refer to the entire set of exhibits as "Exhibit 2" and then to identify individual exhibits by page number and description.

which is "eighty percent" electrical work, McClease had experience as a marine electrician with the Navy. (McClease Dep. at 11-13.) Additionally, during McClease's three years with defendant prior to taking on the Pump Station Mechanic position, McClease also "pulled call" as a Pump Station Mechanic, which required him to perform the duties of a Pump Station Mechanic for at least two 24-hour shifts every month. (Id. at 9, 12-13.)

In August 2006, plaintiff received a second low evaluation,[3] which he believed to be a response to his complaints of discrimination. (Pl. Aff. ¶ 15; Pl. Resp. Opp. Summ. J., Exh. 2 at 8 (8/06 evaluation at 2).) On 24 August 2006, plaintiff filed an EEOC charge alleging he was denied the Pump Station Mechanic position in retaliation for his complaints of discrimination. (Compl. ¶ 14; Pl. Aff. ¶ 17; Pl. Resp. Opp. Summ. J., Exh. 2 at 2 (8/24/06 EEOC charge).) A supervisor told plaintiff he had been denied the Pump Station Mechanic position because he failed to follow "proper protocol" and pursue his discrimination complaints through defendant's human resources department. (Pl. Aff. ¶ 16.)

In addition to the foregoing, plaintiff sustained elbow and back injuries in a January 2006 work-related vehicle accident, which caused him to be "in and out of work" from January through November 2006. (Hayes Aff. ¶¶ 9-10.) On 23 October 2006, plaintiff received a partial release to

---

[3] Both plaintiff and Magistrate Judge Daniel characterize the two evaluations as low. (Pl. Resp. Opp. Summ. J. at 3-4; M&R at 2-3.) Defendant disputes this characterization, noting that "on the specified evaluations, [p]laintiff was marked as having met all standards in his first and exceeding standards in his second." (Deft. Objs. at 5.) For the reasons *infra*, the court concludes that whether the evaluations were actually low is irrelevant to plaintiff's remaining claim of retaliatory termination, and notes in particular that, in the second evaluation, plaintiff was marked as below standard (3 out of 7 possible points) in one element for his "[u]nwillingness to comply with City procedure in regards to following chain of command. This is consistant [sic] with insubordination and will not be tolerated in the future." (Pl. Resp. Opp. Summ. J., Exh. 2 at 10 (8/06 evaluation at 1).) In his prior evaluation, plaintiff was marked as above standard on this element (5 out of 7 possible points) and was described as "complet[ing] tasks as directed and ask[ing] for clarification if instructions are not understood." (Id. at 15 (12/05 evaluation at 1).) At the summary judgment stage, this evidence is consistent with plaintiff's contention that he was being treated poorly for his complaints about perceived racial discrimination.

return to light duty work related to plaintiff's elbow injury. (Pl. Resp. Opp. Summ. J., Exh. 2 at 46 (12/20/06 N.C. Indus. Comm. Op. at 2)).) On 9 November 2006, defendant offered plaintiff a light duty position. (Id.) The following day, plaintiff received a partial release to return to light duty work related to his back injury, with a recommendation that plaintiff see a neurologist for a second opinion on plaintiff's back injury. (Id.) Plaintiff made an appointment with a neurologist for 28 November 2006. (Pl. Resp. Opp. Summ. J., Exh. 3 at 9 (transcript of plaintiff's termination appeal hearing).)

On Thursday, 16 November 2006, defendant directed plaintiff (through his attorney) to return to work on the following day (17 November 2006) at 7:30 a.m., or to produce a doctor's note substantiating the medical necessity for plaintiff's continued absence. (Pl. Dep. at 92-94; Hayes Aff. ¶ 13.) Plaintiff did not return to work or produce a doctor's note as requested. (Pl. Dep. at 95-98; Hayes Aff. ¶ 14.) Plaintiff telephoned his supervisor on Monday, 20 November 2006, at 11:30 a.m., to inform defendant of his continued absence; however, plaintiff's supervisor forgot to tell anyone about the call until after Muse had issued plaintiff a termination letter. (Pl. Resp. Opp. Summ. J., Exh. 3 at 4.)

Defendant terminated plaintiff by letter from Muse to plaintiff dated 4 December 2006. (Hayes Aff., Exh. A.) Hayes was aware of plaintiff's EEOC charge at the time she and Muse decided to terminate plaintiff. (Pl. Resp. Opp. Summ. J., Exh. 3 at 12-13.) Plaintiff appealed, and the city manager (Hartman) upheld the termination on 20 December 2006, based in part on the recommendation of Muse and Hayes. (Hayes Aff. ¶ 16; Hartman Dep. at 18.) On the same day, the North Carolina Industrial Commission issued an opinion denying defendant's application to terminate plaintiff's workers compensation benefits on the grounds that defendant "ha[d] failed to

4

make a showing that plaintiff has unjustifiably refused suitable employment within his restrictions." (Pl. Resp. Opp. Summ. J., Exh. 2 at 46 (12/20/06 N.C. Indus. Comm. Op. at 2)).) Plaintiff filed a second EEOC charge alleging that he was terminated because of his race and in retaliation for complaining of race discrimination. (Compl. ¶ 17.)

Plaintiff received right-to-sue letters from the EEOC on both charges, and timely commenced this action on 27 October 2007, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). The complaint contains claims for failure to promote and termination in retaliation for plaintiff's complaints of race discrimination, and termination based on race. (Compl. ¶¶ 13, 16.) Defendant moved for summary judgment on 29 August 2008, and in his 13 February 2009 M&R, Magistrate Judge Daniel recommended granting summary judgment to defendant on all of plaintiff's claims except for plaintiff's retaliatory termination claim. (M&R at 11.) Defendant filed its objections on 23 February 2009, objecting to: (1) the M&R's "fail[ure to] address [d]efendant's contention that [p]laintiff's [r]esponse and supporting affidavit" filed in opposition to the motion for summary judgment "were not timely filed and should therefore be stricken in their entirety[;]" and (2) "the finding in the M&R that [p]laintiff has made a prima facie case of retaliation." (Deft. Obj. at 2-3.)

## II. DISCUSSION

A.  Standard of Review

A party may file specific, written objections to a magistrate judge's M&R within ten days after being served with a copy of the recommended disposition. 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b). The district court must conduct a *de novo* review of those portions of the M&R to which proper objections are made. 28 U.S.C. § 636(b)(1).

Summary judgment is appropriate in those cases in which there is no genuine dispute as to

5

a material fact, and in which it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Haavistola v. Community Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir. 1993). Summary judgment should be granted in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." Id. In making this determination, the court draws all permissible inferences from the underlying facts in the light most favorable to the party opposing the motion. "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate ." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991).

B.   Defendant's Request to Strike Plaintiff's Untimely Response[4]

At the outset, the court notes that defendant did not file a motion to strike plaintiff's untimely response, but rather "request[ed]" in its reply brief that the court strike the response. (Reply Supp. Mot. Summ. J. at 2; see also Deft. Objs. at 3 ("[d]efendant respectfully requests that [p]laintiff's [r]esponse and supporting affidavit be stricken in their entirety as untimely").) "A request for a court order must be made by motion." Fed. R. Civ. P. 7(b); see also L. Civ. R. 7.1, EDNC (requiring motions "to be filed with an accompanying supporting memorandum"). Furthermore, in reviewing the notice of electronic filing that was created when plaintiff filed his response, the court observes that plaintiff's response was filed at 12:04 a.m. on 22 October 2008, four minutes past the deadline given plaintiff by the court. While the court does not commend plaintiff's counsel for waiting until the eleventh hour to file the response, the court concludes that defendant suffered no prejudice from

---

[4] As defendant notes in its objections to the M&R, plaintiff's response to defendant's motion for summary judgment was originally due on 18 September 2008. On 22 September 2008, plaintiff filed a motion for extension of time to respond, and was granted an extension until 21 October 2008. Plaintiff then filed his response on 22 October 2008.

6

the late filing. The objection is OVERRULED.

C.     Plaintiff's Retaliatory Termination Claim

To prove a *prima facie* case of retaliation under Title VII, plaintiff must show that "(1) []he engaged in a protected activity; (2) the employer took an adverse employment action against h[im]; and (3) a causal connection existed between the protected activity and the asserted adverse action." Von Gunten v. Maryland, 243 F.3d 858, 863 (4th Cir. 2001). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close[.]" Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (internal quotation marks and citation omitted). "In cases where temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus. Specifically, evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007) (quotation and citations omitted).

If plaintiff can "establish[] the elements of h[is] *prima facie* case, the burden shifts to [the employer] to proffer evidence of a legitimate, non-discriminatory reason for taking the adverse employment action." Matvia v. Bald Head Island Mgmt., 259 F.3d 261, 271 (4th Cir. 2001). If defendant is able to do so, the burden then shifts back to plaintiff to show that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

Defendant contends that plaintiff has not shown a causal connection between any protected activity and plaintiff's termination. (Deft. Obj. at 4.) Taking the evidence in the light most

7

favorable to plaintiff, plaintiff's final instance of protected activity occurred when he filed an EEOC complaint on 24 August 2006, and he was terminated less than four months later. The Fourth Circuit has held that a four-month interval between an employee's filing of an EEOC complaint and her termination "certainly satisfies the less onerous burden of making a prima facie case of causality." Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). However, even assuming (as defendant contends) that four months is insufficient to make out a *prima facie* case of causation under the Supreme Court's holding in Clark, the court finds that – taking all the evidence in the light most favorable to plaintiff – that plaintiff has provided sufficient other evidence of retaliatory animus. Plaintiff complained about Muse on several occasions, and Muse threatened to fire plaintiff and to issue a disciplinary letter against plaintiff, and instructed plaintiff's supervisor to lower an evaluation of plaintiff. Defendant promoted another employee, who had not even submitted an application, to the position plaintiff had applied for, and a supervisor told plaintiff that he did not get the promotion because he had not sought to resolve his complaints about Muse through "proper" channels; i.e., through defendant's human resources department headed by Hayes. Plaintiff received a low mark on another evaluation for his failure to "follow[] chain of command." Hayes and Muse were the two individuals who decided to terminate plaintiff, and who opposed the appeal of his termination. Thus, the court finds sufficient evidence of recurring retaliatory animus to conclude that plaintiff has made a *prima facie* case.

Magistrate Judge Daniel also concluded that defendant "has articulated and offered specific evidence to support a legitimate, nonretaliatory reason for the termination[,]" (M&R at 10), and thus the burden shifts back to plaintiff to show evidence that defendant's stated reasons for plaintiff's termination could be pretext. Defendant objects to Magistrate Judge Daniel's finding that "there

was 'sufficient evidence in the record' from which a reasonable jury could conclude that [d]efendant's reasons for terminating [p]laintiff were a pretext." (Deft. Obj. at 11.) Again, however, taking all the evidence and the inferences therefrom in the light most favorable to plaintiff, the court concludes that plaintiff has offered sufficient evidence of pretext to withstand summary judgment. Although plaintiff had been "in and out of work" since January 2006 due to his injuries, it was not until after he filed his first EEOC charge in August 2006 that defendant gave him less than 24 hours' notice to report to work, and upheld his termination even though it appeared to be based on a misapprehension of plaintiff's medical status. In making this finding, the court does not "decide whether the reason [for plaintiff's termination] was wise, fair, or even correct," DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998), the court decides simply that a reasonable jury could find that the stated reason was pretext. Accordingly, this objection to the M&R is OVERRULED.

### III. CONCLUSION

For the foregoing reasons, defendant's objections are OVERRULED, and the court ADOPTS the M&R. Defendant's motion for summary judgment is ALLOWED IN PART, and plaintiff's claims of refusal to hire and race-based termination are DISMISSED. Plaintiff's retaliatory termination claim remains for trial.

This 23 March 2009.

_____
W. Earl Britt
Senior U.S. District Judge